EMMA MEISENBACH, Respondent, v. SUPREME TENT, KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

St. Louis Court of Appeals, May 25, 1909.

1. FRATERNAL BENEFICIARY ASSOCIATION: Suspension for Non-payment of Assessments: Tender: Question for Jury. In an action on a life insurance policy issued by a fraternal benefit association at least three witnesses testified that insured tendered payment of an assessment to the proper officer of the association, who refused to accept it. On the question whether insured defaulted in the payment of said assessment, *held* an issue of fact for the jury.

2. ————: ————: Illness of Insured.   The illness of a member of a fraternal benefit association furnishes no reason for refusing to accept payment of an assessment or for suspending him from membership, there being no allegation that his application for membership contained false statements.

3. ————: ————: Tender: Notice.   Where the by-laws of a fraternal benefit association provide that failure to pay any monthly assessment when due should work a forfeiture of membership, without notice, if a member fails to pay such as-

sessment when due, it would be incumbent upon him, if he desired to recover his membership, to seek reinstatement in accordance with the by-laws even though he received no notice of the forfeiture; but if he made a timely tender of the assessment and it was wrongly refused, it cannot be presumed he knew his membership was forfeited or suspended, because neither would result according to the by-laws, and, in such case, if either occurred, it would be by a declaration of the officers of the order without cause, and the member could not be regarded as having acquiesced in the forfeiture until he had notice of it.

4. ———: ———: ———: ———: **Question for Jury.** Where the wife of a deceased member of a fraternal benefit association testified that no notice of suspension of membership was sent to her husband, it was for the jury to say whether or not one was sent. ·

5. ———: **Payment of Assessments: Excuse for Failure to Pay.** In order to preserve his membership in a fraternal benefit association, insured must pay or tender the regular assessment, unless the conduct of the society or its officers or other circumstances suffice to excuse him from so doing.

6. ———: **Suspension for Non-payment of Assessments: Failure to Apply for Reinstatement.** Where the proper officer of a fraternal benefit association to receive payment of assessments testified that insured offered in March to pay an assessment due in February, and that he refused to accept it, unless insured would submit to a medical examination in accordance with a by-law of the order, which the latter declined to do, and where there was other evidence that the latter had properly tendered his February assessment during that month and that he had never been in default, and that in March and the following months he was very ill and incapable, during part of that time, of attending to business affairs, and that he died in the following January, it cannot be held, as a conclusion of law, that if he was wrongly suspended, as the evidence tends to prove, he abandoned his membership by not seeking reinstatement, in accordance with the by-laws of the order.

7. ———: **Proofs of Loss: Denial of Liability.** Where it is palpable that the insurer never had any intention of paying the claim upon receipt of proof of loss, a recovery will not be denied, because the proofs furnished were defective.

## Appeal from St. Louis City Circuit Court.—*Hon. Dan'l G. Taylor*, Judge.

**AFFIRMED.**

*John I. Martin* and *John M. Dickson* for appellant.

(1)    There was no evidence whatever in this case of any tender by any one of the Meisenbach's February assessment during the month of February, 1903, or within ten days thereafter.    Hence plaintiff's instructions 1 and 4 are without any basis.    Potts v. Plaisted, 30 Mich. 149; Procter v. Robinson, 35 Mich. 284; Tuthill v. Morris, 81 N. Y. 99.    (2)    The clear weight of the evidence supports the contention of defendant that Meisenbach was suspended March 1, 1903, and was never thereafter reinstated.    Vail v. Jacobs, 62 Mo. 130; Sullivan v. Railroad, 72 Mo. 175.    (3)    There was absolutely no evidence of any acts on the part of the Supreme  Tent or the local tent tending to show any waiver on the part of the order of its laws relating to payment of assessments; even if any power to bind the order existed in the officers of the local tent, which is denied.    Therefore, the tender made by Meisenbach to Mairson, after March 10, 1903, was too late to effect his suspension.    Lavin v. Grand Lodge, etc., 104 Mo. App. 19.    (4)    The verdict of the jury was in violation of instruction No. — given for defendant, relating to abandonment, as the evidence discloses that Meisenbach abandoned his claim after making his tender to Mairson; he is presumed to know the rules of the order and the methods provided for reinstatement of a member after suspension, or when he has been suspended by the mistake or fraud of the Tent Record Keeper.    Lavin v. Grand Lodge, 104 Mo. App. 20.    (5)    If the proposition upon which the first part of plaintiff's instruction 2 be true, viz.: that proof of the contents of the certificate is *prima facie* evidence of plaintiff's right to recover, involved in that is the proof of death and of the disease of which he died. There was no competent evidence of the cause of Meisenbach's death. (6)    The instructions asked by defendant and given by the court should have been given as asked, without modification, and defendant claims such modification as error.

*James J. O'Donohoe* for respondent.

(1)   The issuance of the certificate and Meisenbach's death were proven upon the trial, and this proof established a *prima facie* right of recovery in respondent. Mulroy v. Knights, 28 Mo. App. 468; Stewart v. Legion of Honor, 36 Mo. App. 319; Force v. Knights of Honor, 41 Mo. App. 106; Chadwick v. Triple Alliance, 56 Mo. App. 474.   And "where the plaintiff has made out a *prima facie* case, although the defendant may introduce evidence which entirely overthrows and disproves the *prima facie* case of the plaintiff, the trial court cannot say, as a matter of law, that it is so overthrown, and direct a verdict for the defendant.   The credibility of the witnesses and the weight of the evidence are peculiar matters for the jury.   The plaintiff is entitled to have the judgment of the jury on the credibility of the witnesses produced by the defendant and the value of their testimony."   Boone v. Railroad, 20 Mo. App. 235; Gibson v. Zimmerman, 27 Mo. App. 90.

(2)   Sections 456 and 460 of defendant's laws are not sufficiently pleaded.   The terms, tenor or effect of those laws are not set up in the answer; and there is no legal evidence to show that said sections were part of defendant's laws, or that they were in force at any time during Meisenbach's membership, and hence said sections should not have been received in evidence in this case.   Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496; Chadwick v. Triple Alliance, 56 Mo. App. 475.   Those sections (456-460) must be read together and they are not self-executing.   Bange v. Legion of Honor, 128 Mo. App. 461; Seehorn v. Catholic Knights of A., 95 Mo. App. 233; Puhr v. Grand Lodge, 47 Mo. App. 47; Lewis v. Benefit Association, 47 Mo. App. 586; McMahon v. Maccabees, 151 Mo. 522.   They are unreasonable and void.   State ex rel. v. Merchants' Exchange, 2 Mo. App. 96; Purdy v. Bankers' Life Ass'n, 101 Mo. App. 91.   Defendant, by its course of dealing with Meisenbach and the other members, has waived the

prompt payment of assessments. Dolan v. Royal Neighbors of A., 123 Mo. App. 147; Andre v. Modern Woodmen, 102 Mo. App. 377; Canveren v. Ancient Order of Pyramids, 98 Mo. App. 433; Courtney v. St. Louis Police Relief Association, 101 Mo. App. 261; Frame v. Woodmen of the World, 67 Mo. App. 127; Knights of Pythias v. Withers, 177 U. S. 260.   (3)   According to the evidence of H. Mairson, former Record Keeper of Dewey tent No. 84, it was the custom of defendant to mail notices to its members in the following instances: (1)   When any assessment was due and payable.   (2) Of any intended suspension.   (3)   Of any suspension. Whether such notices were mailed to Meisenbach must be determined by the jury. Bange v. Legion of Honor, 128 Mo. App. 461. "The burden of proving notice rests upon the party asserting its existence." 21 Am. and Eng. Ency. of Law (2d Ed.), p. 589; Bartlett v. Varner, 56 Ala. 580.   The contents of notice, including the lists of deaths and the amount due upon the assessment, are as necessary to be proved as the fact of service.   Supreme Lodge v. Johnson, 78 Ind. 110; Agnen v. A. O. U. W., 17 Mo. App. 254.   No suspension is proven in this case; and, where it is the custom of the order to notify its members in case of suspension, there can be no acquiescence or abandonment of the order under a void suspension, without notice thereof to the member. Bange v. Legion of Honor, 128 Mo. App. 461.   (4) There was ample evidence to submit to the jury the question of tender of the assessment for the month of February, 1903.   There is no evidence in this case tending to show that Meisenbach abandoned defendant order or acquiesced in any suspension.   At the instance of defendant the court submitted the issue of tender, abandonment and acquiescence to the jury, and defendant should not now be heard to challenge the verdict on the ground that it was improper to submit such issues to them.   Harris v. Hays, 53 Mo. 90; Flowers v. Helm, 29 Mo. 324; Banks v. Hammerslough, 72 Mo. 274;

Tomlinson v. Ellison, 104 Mo. 105; Harper v. Morse, 114 Mo. 317; Berkson v. Railroad, 144 Mo. 211; State ex rel. v. Chick, 146 Mo. 645; Hargan v. Brady, 155 Mo. 669; Mirrieless v. Railway, 163 Mo. 470; Novelty Mfg. Co. v. Pratt, 21 Mo. App. 171; Scott v. Nevada, 56 Mo. App. 169; Silvey & Jennings v. Dunham, 60 Mo. App. 635; Frankenthal & Bro. v. Assurance Co., 76 Mo. App. 19; Thompson v. Railroad, 86 Mo. App. 141; Murphy v. Century Building Co., 90 Mo. App. 626; Hayes v. Bunch, 91 Mo. App. 466; Kansas City v. Bunch, 91 Mo. App. 466. (5) Want of notice and proofs of death are waived by the defendant denying liability on the ground that Meisenbach was suspended for the non-payment of February, 1903, assessment. Johnson v. Continental Casualty Co., 122 Mo. App. 369; Welsh v. Chicago Guaranty Fund Life Soc., 81 Mo. App. 30.

GOODE, J.—John Meisenbach, deceased, held a certificate of insurance from defendant, issued to him as a member of Dewey Tent No. 84, in the city of St. Louis, he having joined the society August 26, 1902. The certificate called for the payment of one thousand dollars to plaintiff, his wife, on satisfactory proof of his death, provided he had complied with the laws of the Supreme Tent and had answered truthfully the questions in his application for membership. One of the conditions of the contract was that if he should omit payment of a monthly assessment in the month it fell due, he should stand suspended, without notice, from his membership and the contract of insurance should be forfeited. The by-laws of the society provided for the reinstatement of suspended members in several ways. One suspended because of non-payment of a monthly rate, might be reinstated simply by paying the assessment at any time in ten days after the suspension. If the default continued more than ten days and less than

140 App.—6

sixty days, he was bound to pay up all assessments and furnish a certificate of health from the physician of the tent. After sixty days, but within six months, an application for reinstatement was required to be presented to the tent for review, and if approved by two-thirds of the members, the suspended member was reinstated in his rights. After six months he still could be reinstated by observing the regulations prescribed for the admission of new members, omitting initiation. Another by-law said a member suspended by neglect or mistake of the tent record keeper might be reinstated by the supreme commander any time in six months after the suspension, upon producing satisfactory proof of the neglect or mistake. It is admitted the insured paid all dues and assessments from the inception of his membership in August, 1902, to February, 1903, but it is contended he did not pay the February assessment, was suspended for nonpayment and never was reinstated or took any step to be; hence was not a member when he died in January, 1904, and his certificate of insurance was not then in force. Plaintiff instituted the present action on the certificate. The answer admits the membership of the deceased, and after pleading forfeiture of membership for the reasons we have stated, avers plaintiff gave no notice to Dewey Tent of the death of her husband, did not apply to the tent record keeper for a blank proof of death or furnish such proof to the tent record keeper to be forwarded to the supreme record keeper, and failed to make proof of the death according to the requirements of the contract. The answer next pleads plaintiff was barred from asserting a demand on the certificate because the deceased acquiesced in the forfeiture of the contract and because, further, she omitted to make claim against the order for two years after his death. Certain matters in the reply are irrelevant to the points before us and need not be stated, but others are relevant, to-wit: The denial that Meisenbach did not pay the February, 1903, as-

sessment, or failed to pay any other; averments that he was at all times ready and willing to pay all assessments as the same fell due; was arbitrarily, and without warrant or authority, dropped from membership about March 1, 1903, and defendant, both before and after said date, refused to receive any payments from him, though they were tendered; tender of the February assessment prior to the last day of the month, refusal of defendant to receive the same, declaration of the tent record keeper it would be useless for deceased to make further tenders, or have others make them for him, as they would not be received; the so-called suspension was void, and upon learning of it, deceased treated it as of no effect. The reply further alleged plaintiff, upon the death of her husband, notified the record keeper of Dewey Tent No. 84 of his death and requested blanks for proof of the fact; alleged defendant then, and ever since has, denied all liability on account of the certificate in suit, and said record keeper and defendant failed and refused to furnish such blanks until December 21, 1905, though they were often demanded. When furnished on the date mentioned, plaintiff filled them out and delivered them in due form to defendant, defendant accepted them and offered no objection on the score of their being too late, or otherwise, until it filed the answer in this cause. The instructions are so long we cannot give the space requisite to print them, but will state the rules of decision they declared should control the jury in determining whether or not defendant was liable. After refusing to direct a verdict for defendant, the court instructed that if the insured was ill in the month of February, 1903, this fact would not justify defendant for refusing to accept his assessment for said month, if it was tendered and refused prior to the last day of the month; that if the assessment for February, 1903, was tendered in behalf of deceased to Mairson, record keeper of Dewey Tent No. 84, on or about the 28th day of the month, and said Mairson refused to

accept said assessment, then there could be no valid suspension of deceased for non-payment of it; that if the insured failed to pay, or caused to be paid for him, the regular assessment for the month of February, 1903, the jury would find his membership stood forfeited on March 1, 1903, according to the laws of the society; that if the jury found the insured was suspended and his certificate declared forfeited for non-payment of the assessment, and he lived eleven months after his suspension and did not seek reinstatement in any mode provided in the by-laws, the different modes being stated, the verdict must be for defendant; that if the insured was suspended and his membership forfeited for the alleged non-payment of assessment No. 208 for the month of February, 1903, then whether or not said suspension and forfeiture were made in compliance with the rules of the order, and although he had tendered the assessment in the time provided, if the insured was notified of the suspension, the jury should find for defendant, if they found the insured took no steps thereafter to have his forfeiture set aside by pursuing the methods prescribed in the by-laws of the order, or by proceeding in a court of law or equity for reinstatement of his membership, and found further that he neither paid, nor tried to pay, any assessment accruing from a member in good standing, and failed for eleven months to insist on his rights in the order; that such failure to take some steps to procure reinstatement during eleven months might be considered by the jury as evidence the insured had abandoned all claim to membership and if they found he did abandon it, the verdict should be for defendant. One instruction requested by defendant was given with certain lines struck out. It is very long and all we need say regarding it is that the matter eliminated by the court was irrelevant to the issues.

It will be perceived the instructions precluded recovery by plaintiff: Firstly, if her husband defaulted in

Meisenbach v. Maccabees.

the payment of the February, 1903, assessment, was suspended in consequence of his default, and thereafter did not procure, or attempt to procure, reinstatement in the manner prescribed in the by-laws; secondly, if his membership was suspended, whether for default in payment of an assessment, or without default, and he was notified of the suspension and took no action to be reinstated, or revive his rights as a member of the order, and did not thereafter pay or offer to pay dues.    This second theory of defense was awkwardly drawn, the first part of the instruction directing a verdict for defendant if the facts were found to have been according to the hypothesis, whereas the second part treated those facts, if found to exist, as evidence from which the jury might find deceased had abandoned his membership in the society.    The instruction was given at the request of defendant and, of course, error cannot be assigned for defects in it, and none has been; nor has error been assigned upon the instructions granted for plaintiff, except lack of evidence to found them on.    The controversy in this court is upon the question whether the evidence so conclusively establishes the defenses that the verdict for plaintiff cannot be upheld, rather than as to errors of law.    Counsel for defendant insist the evidence proved beyond doubt the insured defaulted in the payment of his February assessment, was suspended and never thereafter sought reinstatement.    We cannot accept this view without setting aside the testimony of several persons as unworthy of credence.    At least three witnesses testified the February assessment was tendered to Mairson, the record keeper of Dewey Tent, for the insured, and Mairson refused to accept it, saying the insured was a sick man.    An issue of fact was presented for the jury on this matter.    The court rightly held illness of the insured was no reason why his dues should be refused or he suspended from membership, there being no allegation his application made false statements.    If he defaulted in payment of assessments

and stood suspended for that reason, different conditions would attach to his duty to seek reinstatement from what would attach if he was suspended irregularly; that is, without a default on his part. If he failed to pay an assessment, he would be aware of the fact and would be presumed to know the by-laws worked a suspension of his membership; therefore it would be incumbent on him, if he desired to recover, instead of abandon, his membership, to seek reinstatement according to the methods the by-laws prescribed, even though no notice of suspension was sent to him. But if he tendered the assessment and it was wrongly refused, it cannot be presumed he knew his membership was forfeited or suspended, because neither would result according to the by-laws; and if either occurred, it would be by a declaration of the officers of the order, without cause. Mrs. Meisenbach testified positively no notice of suspension was received by her husband, and whether one was sent was for the jury to say. [Bange v. Legion of Honor, 128 Mo. App. 461.] In this contingency he could not be regarded as having acquiesced in the forfeiture until he had notice of it.

To preserve his membership the insured ought to have continued to pay or tender monthly assessments unless the conduct of the society or its officers, or other circumstances, sufficed to excuse him from doing so. The record keeper, Mairson, testified Meisenbach offered during the month of March, to pay his February assessment and the keeper refused to take it unless Meisenbach would submit to a medical examination, which he declined to do. If Mairson was right in his contention that the assessment for February had not been paid or tendered, he was right in insisting on a medical examination. But we have seen the evidence was contradictory on this issue, as witnesses swore the payment was tendered during February, and if this was true, the insured was never in default, and was not bound to submit to a medical examination. Further,

the proof goes to show that in March and the following months, Meisenbach was very ill with chronic bronchitis and during part of the time, at least, was in such a condition as to be incapable of attending to business affairs. He went to Texas in 1903 and died there the following January. All the circumstances considered, it cannot be held as a conclusion of law, that if he was wrongly suspended, as the evidence tends to prove, he abandoned his membership by not seeking reinstatement. [Bange v. Legion of Honor, supra.]

The testimony shows Mrs. Meisenbach reported her husband's death a few days after he was buried, called on the proper local officer four times with reference to the steps needed to get her insurance money, and no blanks for making out proof of death were furnished, as according to the by-laws, they should have been. When blanks were furnished two years later, the requisite proof was made out and sent to the company. But this was unimportant, for long before defendant had denied liability, contending plaintiff "had no claim; absolutely none, because the man was suspended ten months before he died," to use the language of the Great Commander of Missouri. It is out of the question to debar plaintiff from recovery because of defective proof of loss, for it is palpable defendant never had the least intention to pay the claim upon receipt of proof. [Johnson v. Casualty Co., 122 Mo. App. 369.]

The judgment is affirmed. All concur.